**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **SABRINA HERNANDEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-cv-01395-O-BP** |
| | § | |
| **MICHAEL VERASTIQUE, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion to Dismiss that Defendants Michael Verastique, Furniture Buy Consignment, Inc. ("FBC"), and Quick Trip Movers ("QTM") (collectively "Defendants") filed on June 2, 2026 (ECF No. 22), the response that *pro se* Plaintiff Sabrina Hernandez filed on June 15, 2026 (ECF No. 24), and the reply that Defendants filed on June 22, 2026 (ECF No. 26). After reviewing the pleadings and the applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **GRANT** Defendants' Motion (ECF No. 22) and **DISMISS** Hernandez's Amended Complaint.

## I. BACKGROUND

This is an employment discrimination case that Plaintiff Sabrina Hernandez filed under the Americans with Disabilities Act ("ADA"). Hernandez has a "documented medical history of Bipolar II disorder and panic/anxiety disorder," which, since her diagnosis in 2013, "has substantially limit[ed] major life activities." ECF No. 20 at 3. From March 2020 to June 2023, she worked in an administrative and accounting role for FBC, a furniture consignment store that Michael Verastique and his wife own. During her time there, Hernandez alleges that Verastique subjected her to an "increasingly stressful and emotionally difficult" work environment after she

expressed concern over "workplace practices she believed were improper." *See* ECF No. 20 at 5. Hernandez then began demonstrating "severe and escalating anxiety symptoms," and began exhibiting signs of "emotional instability" as Verastique added responsibilities to her job description. *Id.* at 7-8. In 2021, Hernandez had a hysterectomy and underwent transcranial magnetic stimulation, but she maintains that even in the periods following these procedures, Verastique did not alleviate her substantial workload. *Id.* at 7-9. This workload included managing the accounts of QTM, a company that Verastique's son owned. *See id.* at 12.

In sum, Hernandez alleges a host of ailments associated with a manic and severe mental health deterioration ("anxiety, emotional instability, sleep deprivation, impaired concentration, panic . . . , exhaustion, paranoia") that left her unable "to safely manage the expanding workload." *Id.* at 10, 12. Alleging significant pressures from an "excessive" workload, emotional distress, and a "psychiatric decline," Hernandez resigned her position in June 2023. *See id.* at 18-19.

On December 10, 2025, Hernandez sued FBC and Verastique, alleging violations of the ADA. ECF No. 1. After complying with the Court's Order of April 28, 2026 to amend her complaint and plead her best case, Hernandez filed her Amended Complaint on May 12, 2026. ECF No. 20. In that Amended Complaint, she added QTM as a defendant. *Id.* Although she did not serve QTM, QTM waived service. *See* ECF No. 22 at 2 n.2. On June 2, 2026, Defendants moved to dismiss. *See id.*

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim for relief, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(1). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Rather, the complaint must include enough facts "to raise a right to relief above the speculative level" with the court operating "on the assumption that all the complaint's allegations are true." *Id.*

District courts "can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)). Thus, "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007). When considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, courts may consider documents outside the complaint that are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Additionally, courts may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the

complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (cleaned up)).

### B. *Pro se* parties

The Court subjects a *pro se* party's pleadings to less rigid analysis than those of a party represented by counsel. "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, "even a liberally-construed *pro se* civil rights complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to state a claim for relief." *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017) (cleaned up).

## III. ANALYSIS

Defendants raise various dispositive grounds for dismissal, including Hernandez's failure to administratively exhaust her remedies. *See generally* ECF No. 22. The Court need not reach all of them because Hernandez plainly did not exhaust her remedies.

### A. Hernandez did not exhaust her administrative remedies before filing suit.

"[A]n employee must comply with the ADA's administrative prerequisites prior to commencing an action in federal court against her employer for violation of the ADA." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996). Compliance is a two-part endeavor. The

plaintiff must "file[] a timely charge with the [Equal Employment Opportunity Commission] and receive[] a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (citing *Dao*, 96 F.3d at 788-89). "Under the ADA, a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory act." *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002) (citing 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5(e))). Then, after receiving a right-to-sue letter, the plaintiff must file suit within 90 days of the date of receipt. *Taylor*, 296 F.3d at 379. "This rule has an important policy justification. One of the central purposes of the employment discrimination charge is to put employers on notice of 'the existence and nature of the charges against them.'" *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984)).

"In determining whether a plaintiff has exhausted a particular claim, 'the scope of an EEOC complaint should be construed liberally.'" *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021). But the scope of a plaintiff's EEOC complaint is nonetheless "limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Tex. Dep't of Crim. Just.*, 220 F.3d 389, 395 (5th Cir. 2000) (citing *Young v. City of Hous.*, 906 F.2d 177, 179 (5th Cir. 1990)). Therefore, the plaintiff must provide enough specific facts in her EEOC charge that would trigger the EEOC to investigate a given claim and therefore put the plaintiff's employer on notice of the plaintiff's allegations. *See Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

Plaintiffs fail to exhaust their administrative remedies by either foregoing the above process or asserting claims beyond the scope of the charge and right-to-sue letter. *Id.* "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain*

*v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). While not jurisdictional, the exhaustion requirement "is a precondition to filing suit in district court." *Dao*, 96 F.3d at 789 (quoting *Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 863 (5th Cir. 1983)). Thus, complaints asserting unexhausted claims should be dismissed for failure to state a claim under Rule 12(b)(6). *Id.*

Here, Hernandez received a right-to-sue letter from the EEOC on September 23, 2025, and filed this suit on December 10, 2025, within ninety days. *See* ECF No. 1. That timeframe poses no issue. Instead, the parties diverge on whether Hernandez exhausted her administrative remedies by failing to file an EEOC charge within 300 days of the unlawful employment practices she alleges spawned this case.

Strictly speaking, it is not clear when Hernandez filed the charge that generated her right-to-sue latter. She did not include a copy of her charge with either her original or her Amended Complaint, despite filing well over 100 pages of text message screenshots, medical records, and other assorted attachments. *See* ECF No. 20 at 14-141; *see generally* ECF No. 1. Even so, the record is clear that Hernandez did not file her charge in the 300-day timeframe because she concedes as much—first in her Amended Complaint, and then in her response to Defendants' Motion to Dismiss. *See* ECF No. 20 at 2 ("Plaintiff invokes the continuing violation doctrine and equitable tolling. . . . This . . . is essential to bridge the gap between the end of employment and the assertion of these claims."); ECF No. 24 at 4 ("Plaintiff contends the standard 300-day limitation period should be equitably tolled.").

Although she did not comply with the timely filing requirement, Hernandez advances the continuing-violation doctrine and equitable tolling to preserve her case. *See* ECF No. 20 at 31-32; ECF No. 24 at 4-5. Neither argument is persuasive.

**1. Continuing violations doctrine**

The continuing violations doctrine is a federal common law doctrine that governs accrual and extends the limitations period on an otherwise time-barred claim. *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017). The doctrine "provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred." *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 866 (5th Cir. 1993) (cleaned up). But there is an important distinction between discrimination that "manifest[s] itself over time" and that which does so "in a series of discrete acts." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). This is because "[d]iscrete actions . . . are not entitled to the shelter of the continuing violation doctrine." *Doe v. United States*, 853 F.3d 792, 802 (5th Cir. 2017) (cleaned up). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

On this basis, some species of claims are facially improper candidates for application of the continuing violations doctrine. For example, retaliation "is, by definition, a discrete act, not a pattern of behavior. . . . [So] a plaintiff can only recover for retaliation to the extent that it occurred within the limitations period." *Hamic v. Harris Cnty. W.C. & I.D. No. 36*, 184 F. App'x 442, 447 (5th Cir. 2006); *see also Doe #1 v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. CV 21-564-SDD-SDJ, 2022 WL 16701930, at *18 (M.D. La. Nov. 3, 2022) ("The unique characteristic of a claim of retaliation as a discrete, 'easy to identify' act that 'occurs on the day that it happens' renders the continuing violation doctrine inapplicable." (quoting *Morgan*, 536 U.S. at 110)); *Heath*, 850 F.3d at 737 (noting the difference between "discrete acts that form the basis of traditional discrimination claims from continuing conduct that forms the basis of hostile work

environment claims"); *Horne v. Tex. Specialty Physicians*, No. 6:24-cv-130-JDK, 2024 WL 4882652, at *3 (E.D. Tex. Nov. 24, 2024) ("[T]he continuing violations doctrine applies only to hostile work environment claims—not claims of discrete acts."). Likewise, failure to accommodate claims under the ADA arise from discrete acts. *See Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 674 (N.D. Tex. 2023) (citing *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005)). A request for accommodations that an employer fails to act on is a "discrete act," or more precisely, a discrete omission. *See id.*

Hernandez brings three claims under the ADA: (1) failure to accommodate, (2) retaliation, and (3) hostile work environment. *See, e.g.*, ECF No. 20 at 3. As discussed, the continuing violations doctrine does not apply to the first two claims. But a hostile work environment claim is different. That kind of claim "is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant." *Heath*, 850 F.3d at 737 (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)). In this way they are continuing "because they involve repeated conduct, [and] the unlawful employment practice cannot be said to occur on any particular day." *Id.* (cleaned up) (citing *Morgan*, 536 U.S. at 115-17).

But hostile working environments end on a particular day. As a matter of ordinary reason, "once a plaintiff has left the workplace, [s]he can no longer be subjected to a hostile work environment." *Horne*, 2024 WL 4882652, at *3. Hernandez left her employment with the Verastiques in June 2023, and thereafter it was impossible for any hypothetical hostile work environment to persist past her departure. So no matter when the actions underlying Hernandez's hostile work environment claim occurred, the 300-day clock for filing a claim began ticking no later than June 2023. Hernandez does not explain when she filed her EEOC charge, but her admission that she did not timely file it, her receipt of a right-to-sue letter in September 2025, and

her contention that she filed it after July 15, 2025, confirm that she did not file it within 300 days of June 2023. *See* ECF No. 24 at 5. There is accordingly no occasion for the continuing violations doctrine to excuse Hernandez's untimely EEOC charge in this case.

**2. Equitable tolling**

Next, Hernandez asks the Court to "equitably toll[] [the limitations period] due to the profound, documented mental and physical incapacity [she] suffered as a direct result of the workplace environment." ECF No. 24 at 4. In heeding the Supreme Court's guidance that the EEOC filing period is "subject to equitable doctrines such as tolling," the Fifth Circuit has found that equitable tolling "may be appropriate when 'the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting [her] rights.'" *Ramirez*, 312 F.3d at 183 (first citing *Morgan*, 536 U.S. at 113, and then quoting *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (cleaned up)). But the doctrine is "to be applied sparingly." *Morgan*, 536 U.S. at 113.

Hernandez asserts that because of the "workplace psychological abuse" she allegedly endured in employment with the Verastiques, she "entered a state of profound psychiatric decline, rendering her non-functional and cognitively impaired" after she left her job in June 2023. ECF No. 24 at 4. According to Hernandez, she did not understand the extent of mental problems she faced (such as "[c]ognitive impairment, memory lapses, intrusive memories, flashbacks, and significant memory impairment," as well as "[p]oor judgment, impulsive behaviors," "psychiatric instability, severe anxiety, and an inability to think clearly or focus") until a clinical evaluation of her mental health on July 15, 2025. *Id.* at 5. Only at that time was she able "to process the severe trauma and psychological events she previously lacked the cognitive clarity to understand," and finally pursue an EEOC charge. *Id.*

"[W]hile mental illness *may* toll [a] statute of limitations, it does not do so as a matter of right." *Smith v. Kelly*, 301 F. App'x 375, 377 (5th Cir. 2008) (emphasis in original); *see also Eber v. Harris Cnty. Hosp. Dist.*, 130 F. Supp. 2d 847, 865 (S.D. Tex. 2001) (collecting cases); *Thornton v. S. Cent. Bell Tel. Co.*, 906 F. Supp. 1110, 1118 (S.D. Miss. 1995) (same). And "[t]he party who invokes equitable tolling bears the burden of demonstrating that it applies in [her] case." *Ramirez*, 312 F.3d at 183. When a plaintiff fails to provide an explanation "regarding *how* [her] claimed condition affected her ability or caused her inability to file a timely [charge]," she fails to carry her equitable tolling burden. *See United States v. Valles*, No. 19-50343, 2023 WL 248889, at *2 (5th Cir. Jan. 18, 2023) (emphasis in original).

Here, Hernandez cites to findings in her July 2025 mental health assessment for the proposition that "she was clinically '*incompetent to fully understand the consequences of her financial and professional actions at that time*,'" and treats this conclusion as evidence that her mental challenges prevented her from timely filing an EEOC charge. *See* ECF No. 24 at 5 (emphasis in original) (quoting *id.* at 134) But a review of the cited assessment reveals that the phrase "at that time," specifically referred to "(March 2022–March 2023)," not the post-employment period from June 2023 to July 2025 during which Hernandez did not file a charge of discrimination with the EEOC charge. *Id.* at 134.

Hernandez contends that she experienced and continues to have trouble focusing, thinking, and making decisions during manic periods, *see id.* at 5, and that she suffers from "emotional instability and impaired functioning." *See* ECF No. 20 at 29. But she does not explain how from June 2023 when she left her job until July 2025 when she filed a discrimination charge, she was so incapable of functioning that she could not file her charge. *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 233 (5th Cir. 1999) (without plaintiff demonstrating her "mental state . . . prevent[ed]

her from pursuing her legal rights under Title VII during the filing period," she "cannot justify equitable tolling").

Time and again, the case law "suggests that only the most severe mental disorder will toll the running of limitations." *Eber*, 130 F. Supp. 2d at 865 (citing, *inter alia*, *Lopez v. v. Citibank, N.A.*, 808 F.2d 905, 907 (1st Cir. 1987)). Although the Court is sympathetic to Hernandez's challenges, she does not describe conditions of this caliber, nor explain how her own various conditions comprehensively prevented her from filing an EEOC charge for two years. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."). As a result, she does not carry her burden to demonstrate that equitable tolling is appropriate in this case.

**B. The Court should dismiss Hernandez's claims without leave to amend.**

There is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit recommends suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976).

As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings, "unless it is clear that the defects are incurable." *Great Plains Tr. Co.*, 313 F.3d at 329. In such situations, amendment would be futile, and dismissal with prejudice is appropriate. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). Such is the case here. "While failure to exhaust administrative remedies usually results in a

dismissal without prejudice, when exhaustion is no longer possible, dismissal may be with prejudice." *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007). Far more than 300 days have passed since June 2023, Hernandez concedes that she did not timely file her EEOC charge, and neither of Hernandez's bases for tolling applies to her case. Dismissal without leave to amend is appropriate because further amendment could not cure these defects, and any such amendment would be futile.

## IV. CONCLUSION

Because Hernandez did not exhaust her administrative remedies and any further attempt to do so would be futile, the undersigned **RECOMMENDS** that Chief Judge O'Connor **DISMISS** Hernandez's Amended Complaint.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on June 30, 2026.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE